FILED
May 06, 2022
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JONATHAN, DAVIS
(Name of Plaintiff)

mcsp po box 409060 C13-247L
(Address of Plaintiff)
Ione,ca 95640

2:22-cv-773-DB (PC)
(Case Number)

vs.

COMPLAINT

DOCTOR K,KELLY (mcsp)

DOCTOR M,ASHE chief physician

SAN JUAQUIN MEDICAL HOSPITAL
(Names of Defendants)

I. Previous Lawsuits:

A. Have you brought any other lawsuits while a prisoner: ☐ Yes ☒ No

B. If your answer to A is yes, how many?: ____________ Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to this previous lawsuit:

Plaintiff ______________________________

Defendants ______________________________

2. Court (if Federal Court, give name of District; if State Court, give name of County)

______________________________

3. Docket Number ______________________________

4. Name of judge to whom case was assigned ______________________________

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)

______________________________

6. Approximate date of filing lawsuit ______________________________

7. Approximate date of disposition ______________________________

II. Exhaustion of Administrative Remedies

A. Is there a grievance procedure available at your institution? ☒ Yes ☐ No

B. Have you filed a grievance concerning the facts relating to this complaint? ☒ Yes ☐ No

If your answer is no, explain why not ______________________________

______________________________

C. Is the grievance process completed? ☒ Yes ☐ No

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant KANWAR,KELLEY is employed as DOCTOR (SERGEON) at MULE CREEK STATE PRISON

B. Additional defendants MARIANNA,ASHE MD. CHIef physician mule creek state prison

SAN JUAQUIN MEDICAL HOSPITAL

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

On 8-17-2020 petitioner had a medical procedure done by Dr. KANNAR,KELLEY at the San Juaquin medical hospital

On 10-22-2020 I was told by my prison physician,DR.Taylor that i had a scheduled appointment,with Dr. kelley for an additional procedure to repair a hole in my Septum.

My torn septum was caused by the surgical procedure done by Dr. KELLEY WHICH has left me in severe pain. next page

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

COMPENSATORY RELIEF (INDIVIDUAL CAPACITY) INJUNCTIVE AND DECLARATORY RELIEF IN THEIR OFFICIAL CAPACITY.

Signed this 22 day of April, 2022.

Jonathan L. Davis
(Signature of Plaintiff)

I declare under penalty of perjury that the foregoing is true and correct.

4-22-22
(Date)

Jonathan L. Davis
(Signature of Plaintiff)

STATEMENT CLAIM (cont.)

Dr. K,Kelley who has been deliberatley indifferent to my medical needs,and has caused me much pain and suffering do to his sergical error.

On 10-26-20 petitioner submitted an inmate grievance concerning this issue. Dr. Kelley has violated my civil and constitutional rights. I have a right to have adequate medical care.

On 1-7-21 Dr. Mariam,ASHE exasperated the problem by not holding Dr. Kelley liable for creating a "HOLE" in my Septum and not fixing it in a timely manner. Instead Dr. Ashe denied the appeal and my condition remains the same. Dr.kelley and Dr. Ashe have created and acted with deliberate indifference in my medical care.

I have been deprived of adequate medical suppervision here at san Juaquin medical hospital and have been reckless in their surgical procedures,that has created a hostile atmosphere among all inmates that enter the facility.



CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES



**Headquarters' Level Response**

**Closing Date:** MAY 0 6 2021

**To:** DAVIS, JONATHAN (C56630)
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

**From:** California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:** MCSP HC 20001844

**RULES AND REGULATIONS**

The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

**HEALTH CARE GRIEVANCE APPEAL SUMMARY**

In your CDCR 602 HC, Health Care Grievance, you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

| Issue | Description |
|---|---|
| Issue: Referral (Ear, Nose, and Throat [ENT]) | Assigned different provider to conduct septoplasty surgery. |
| Issue: Staff Complaints (Investigation Request) | Alleges malpractice/negligence by Dr. Kelly at San Joaquin General Hospital. |

**HEADQUARTERS' LEVEL DISPOSITION**

[ ] No intervention. [X] Intervention.

**BASIS FOR HEADQUARTERS' LEVEL DISPOSITION**

Your health care grievance package, health record, and all pertinent departmental policies and procedures were reviewed. You continue to be enrolled in the Chronic Care Program, where your medical conditions and medication needs are closely monitored. Progress notes indicate there is a plan of care in place and the primary care provider has discussed the plan of care with you.

Subsequent to the Institutional Level Response, records indicate that on January 20, 2021, you were seen by a third ENT specialist at a different facility. A postoperative septal perforation with adequate support of the nasal tip and no obvious secondary sequelae was noted; however, the provider indicated attempted repair of a perforation of that size was unlikely to be successful. A septal button was not advised as you exhibited no

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

"whistling" or nasal airway obstruction. You were advised to keep the area moist with nasal saline spray and occasional Vaseline ointment to maintain healthy intranasal mucosa.

California Correctional Health Care Services makes every effort to ensure patients receive timely access to the full range of necessary health care services. In order to improve the overall quality and efficiency of health care services and outcomes, California Correctional Health Care Services includes the appropriate personnel and organizational functions to identify and address barriers to care, including staffing, lockdowns, restricted movement, fog lines, and backlogs.

Your medical condition will continue to be monitored with care provided as determined medically or clinically indicated by the primary care provider. If you have additional health care needs, you may access health care services by utilizing the approved processes in accordance with California Correctional Health Care Services policy.

While the health care grievance process is a means of setting forth your health care concerns, it is not a substitute for direct communication about your health with your health care providers. You are encouraged to continue your care with your assigned health care providers and share with them new or additional clinical information about your conditions that you believe may affect your care. However, California law directs your health care providers to offer and provide only the care they determine to be currently medically or clinically necessary for you, in accordance with appropriate policies and procedures. Previous orders from other health care facilities or staff, input from health care consultants, and/or your own personal preferences may be considered, but do not control the professional judgment of your current health care providers.

This decision exhausts your administrative remedies regarding your request to be assigned a different ENT specialist provider. However, your allegation of medical malpractice/negligence against Dr. Kelly, if true, would constitute a violation of policy. As a result, a Headquarters' Level Directive is issued as stated below.

**HEADQUARTERS' LEVEL DIRECTIVE**

Pursuant to California Code of Regulation, Title 15, Section 3999.231, health care staff at Mule Creek State Prison shall:

- Process this health care grievance as a health care staff complaint, ensuring a confidential inquiry report is conducted to address the grievant's allegation of medical malpractice/negligence on behalf of contracted provider Dr. Kelly.
- Issue an Institutional Level Response to the grievant regarding the findings of the confidential inquiry.

S. Gates

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

5/4/2021
Reviewed and Signed Date

Note 1: The headquarters' level review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The closing date reflects the closed, mailed/delivered date of the health care grievance.

Operative Report
* Final Report *

DAVIS, JONATHAN LYNN - 12523629

C5l630

Result type: Operative Report
Result Date: August 17, 2020 12:06 PDT
Result Status: Auth (Verified)
Result Title/Subject: Operative Report
Performed By/Author: Kelley, Kanwar on August 17, 2020 12:23 PDT
Verified By: Kelley, Kanwar on August 19, 2020 13:02 PDT
Encounter info: 30509215, San Joaquin Hosp, Day Surgery, 8/17/2020 - 8/17/2020

# * Final Report *

**Operative Report**

**Patient: DAVIS, JONATHAN LYNN MRN: 12523629 FIN: 30509215**
**Age: 61 years Sex: Male DOB: 7/25/1959**
Associated Diagnoses: **None**
Author: **Kelley, Kanwar**

OPERATION PERFORMED:
1. Septoplasty
2. Bilateral inferior turbinate reduction
3. Nasal endoscopy with biopsy of nasopharyngeal mass/cyst and and endoscopic marsupialization.

PREOPERATIVE DIAGNOSIS:
1. Nasal obstruction
2. Deviated nasal septum
3. Bilateral inferior turbinate hypertrophy
4. Nasopharyngeal mass
5. Hoarseness

POSTOPERATIVE DIAGNOSIS:
1. Nasal obstruction
2. Deviated nasal septum
3. Bilateral inferior turbinate hypertrophy
4. Nasopharyngeal mass
5. Hoarseness

DATE OF OPERATION: 8/17/2020

SURGEON: Kanwar Singh Kelley, MD

RECEIVED NOV 17 2020

ASSISTANT: None.

ANESTHESIOLOGIST: David Edelsohn, MD.

RECEIVED NOV 17 2020

Operative Report
* Final Report *

DAVIS, JONATHAN LYNN - 12523629

ANESTHESIA TYPE: General endotracheal anesthesia using orotracheal intubation.

ESTIMATED BLOOD LOSS: 200 cc.

FLUIDS: 1L of crystalloid.

URINE OUTPUT: Not recorded.

COMPLICATIONS: None apparent.

SPECIMENS: None

WOUND CLASSIFICATION: II.

CONDITION: Stable to PACU.

FINDINGS:
1. Rightward septal deviation with multiple telescoped septal fracture segments
2. Atrophic septal mucosa
3. Exposed cartilage and missing septal mucosa along anterior left septum prior to beginning procedure
4. Nasopharyngeal mass consistent with cystic lesion - no internal contents

INDICATION FOR PROCEDURE:

This is a 60-year-old male with a history of polymyositis, connective tissue disorder, paranoid personality disorder, sialoadenitis who on CT scan was noted incidentally to have multiple thyroid nodules. Subsequent ultrasound was performed. This was consistent with multinodular goiter the largest of the 2.3 cm. He also has a history of dysphagia which is being managed by gastroenterology. He also has seen speech pathology in the past to help with dysphagia treatment. This is all thought to be related to his polymyositis. In addition the notes make mention of chronic lymphadenopathy. Unclear what this is related to. He also has a distant history of nosebleeds which are controlled with multiple cauterizations. He states this is on both sides. He has difficulty breathing through the right side of his nose now. He also has postnasal drip. For this reason I recommended septoplasty and bilateral inferior turbinate reduction. Discussed risks including but not limited to severe bleeding, septal perforation or hematoma, facial or palate numbness, nasal/cosmetic deformity, scar tissue, unmasked valve collapse, excessive nasal airflow causing facial pressure, crusting, or mucosal atrophy, permanent olfactory dysfunction, CSF leak and epiphora were understood. I discussed avoidance / cessation of all blood thinning products, including fish oil, vitamin E, herbal supplements, NSAID/ASA or similar medications to minimize the risk of bleeding. We discussed the potential use of intranasal splints to facilitate healing as well as various absorbable hemostatic materials or packing as necessary. I discussed the possibility of no improvement or needing subsequent procedures. All questions were answered. No guarantee of success was stated or implied. Understanding the risk benefits and alternatives of the procedure he gave his written informed consent to proceed. In addition during his work-up he was noted to have a nasopharyngeal mass. Subsequent MRI was done which showed this to be a cystic lesion likely consistent with dermoid cyst. Because this is likely contributing to part of his nasal obstruction I did recommend biopsy of the mass to rule out carcinoma and at the same time endoscopic marsupialization to try to open the cyst and prevent it from reforming. I did explain to the patient that even with marsupialization that the cyst do sometimes reformed and can be developed. Understanding this he gave his written informed consent to proceed. I did discuss that removing or marsupializing the cyst would lead to a higher chance of hypernasal voice and uvulopalatal insufficiency postoperatively. He understood this. With respect to his voice and hoarseness he had a lengthy conversation preoperatively about MicroDirect laryngoscopy with vocal fold injection laryngoplasty which has been approved for him. At this time the patient is not concerned with his voice and is okay with having a week and a hoarse voice because it is relatively stable. For this reason the change to the consent to remove

MicroDirect laryngoscopy with vocal fold injection laryngoplasty. This portion of the procedure would not be performed.

PROCEDURE IN DETAIL:
The patient was greeted in the preoperative holding area where written informed consent was reviewed. Thereafter members of the anesthesia team greeted the patient and brought him to the operating room in stable condition. The patient was laid on the operating room table in supine position. Smooth endotracheal anesthesia was induced with the tube taped to the left. The patient was then prepped and draped in the usual sterile fashion for septoplasty and bilateral turbinate reduction along with nasal endoscopy and biopsy/marsupialization of nasopharyngeal cyst/lesion. After brief surgical timeout I first began by anesthetizing and decongesting the patient's nose with epinephrine soaked pledgets. Thereafter I performed intranasal blocks with lidocaine with 1 100,000 epinephrine. I first utilized the endoscope and the Diego turbinate blade to reduce both turbinates. The Diego turbinate blade was inserted in a submucosal fashion and the turbinates were adequately reduced with a combination of microdebrider and bipolar. Thereafter the turbinates were infractured and then outfractured for more opening. I then used the suction Bovie cautery to reduce the posterior most aspect of both inferior turbinates. On the right side the posterior inferior turbinate was noted to be completely obstructing the eustachian tube opening. On the left it was noted to be partially obstructing the eustachian tube opening. Once the turbinates were adequately reduced I turned my attention to the septoplasty portion of the procedure. I then used 1% lidocaine with 1 100,000 epinephrine to hydrodissect my planned Killian incision along the anterior septum. Well injecting I noted an area of exposed cartilage along the left side of the septum likely at the area of prior cauterizations. This means that there was a pre-existing perforation in the septal mucosa prior to beginning the septoplasty. This area of exposed cartilage was directly over the S-shaped telescoped fracture deformity that was deviated to the right. This made raising flaps on the right and left incredibly difficult. I then used a 15 blade scalpel to make a Killian incision and raised flaps first on the left side. I elevated flaps in a sub perichondral plane and utilized the endoscope during this process. Because of the fracture deformity and numerous cauterizations the mucosa was incredibly atrophic and perforated on both the left and right sides. Posteriorly the mucosa was in better shape size able to raised posterior subperichondrial flaps more easily. Bone and cartilage were sequentially removed until the septum was straight.

Once I had adequate opening I was able to better visualize the nasopharynx and past scopes. In the posterior superior nasopharynx is noted a bulge which is consistent with the cyst/mass noted on the MRI and on in clinic examination. This area was entered using Takahashi forceps in a blunt fashion and several biopsy samples were taken. No contents were noted inside of the cyst pocket itself. The anterior wall of the cyst was then sequentially debrided and marsupialization was performed using suction Bovie cautery. Residual bleeding was also controlled using suction Bovie cautery. This was bolstered with a piece of nasopore.

Thereafter I returned my attention to the septoplasty portion of the procedure and trying to repair the septal perforation. I used a piece of bio design free mucosal graft to line the area of the perforation as an inlay graft. This was bolstered by more bio design mucosal grafts as onlay graft on both the right and left sides. Both sides of the nasal passages were irrigated copiously and residual hemostasis was obtained. I then placed Doyle splint on both sides which were sutured in place using 2 Prolene sutures. I then packed around the splints on both sides of the nose with hemo-pore. Finally the patient's stomach was suctioned. He was then handed back over to the anesthesia team extubated in the operating room without incident transfer the PACU in stable condition.

POSTOPERATIVE INSTRUCTIONS:
1. Please start saline sprays every 2 hours while awake starting tomorrow. These sprays should be performed around the plastic splints in the nose to help dissolve the packing inside the nose and breakup blood clots.
2. Recommend Augmentin 875 mg BID x 14 days with probiotics daily to prevent diarrhea.
3. Follow-up in ENT clinic in 2-4 weeks.
4. Please change gauze in front of nose as needed. Bleeding/oozing from the nose is normal for 5-7 days after surgery.



RECEIVED NOV 17 2020

5. No heavy lifting over 10 pounds for 3 weeks.
6. Please do NOT remove the internal nasal splints until seen by ENT. Do not remove the splints without first consulting ENT. If they come out accidentally, please inform ENT.
7. If excessive bleeding, shortness of breath, or vision changes please call or return to the emergency department immediately.
8. Recommend Norco or Morphine for pain. After 5 days you can switch to alternating doses of Ibuprofen and Extra Strength Tylenol.
9. If you spit up or sneeze out a sponge like substance this is your nasal packing. Sometimes it comes out before dissolving. You can dispose of it if it comes out.

Disclaimer: This report was transcribed using voice recognition and auto-fill technology and may contain unforeseen errors due to the technology, ambient noise, and vendor settings. If errors are noted, please notify the ENT clinic.

**Signature Line**
[Electronically Signed on: 08/19/2020 13:02 PDT]

Kelley, Kanwar MD

[Electronically Signed on: 08/19/2020 13:03 PDT]

Kelley, Kanwar MD

[Verified on: 08/19/2020 13:02 PDT]

Kelley, Kanwar MD

**Completed Action List:**
* Perform by Kelley, Kanwar on August 17, 2020 12:23 PDT
* Modify by Kelley, Kanwar on August 19, 2020 13:02 PDT
* Sign by Kelley, Kanwar on August 19, 2020 13:02 PDT
* VERIFY by Kelley, Kanwar on August 19, 2020 13:02 PDT
* Sign by Kelley, Kanwar on August 19, 2020 13:03 PDT

RECEIVED NOV 17 2020

Mule Creek State Prison
Mr. Jonathan L. Davis, Sr. C-56630
P.O. Box 409060, C13-241
Ione, CA 95640

RECEIVED
HCCAB
FEB 01 2021




Health Care Correspondence and
Appeal's Branch
P.O. Box 588500
Elk Grove, CA 95758

-Legal Confidential-

9575838500 B900

# ADA/Effective Communication Patient Summary

**As of:** 10/30/2020 11:18

## Patient Information

**NAME:** DAVIS, JONATHAN
**CDCR:** C56630

## Disability Placement Program

**Current DPP Code(s):**

**DPP Verification/Accommodation Date:** 10/10/17 11:01:45 PDT

**Current Housing Restrictions/Accomodations:**
* Bottom Bunk

## Methods of Communication

**SLI:**

**Primary Method:**

**Secondary Method:**

**Interview Date:**

## Developmental Disability Program

**Current DDP Code:** NDD

**Effective Date:** 07/23/2003 00:00

**Adaptive Support Needs:**

## Testing of Adult Basic Education (TABE)

**TABE Score:** 10.5

**TABE Date:** 08/19/2006 00:00

## Learning Disabilities

**Learning Disabilities:**

## English Proficiency

**LEP:** No

**Primary Language:** English

## Durable Medical Equipment

**Current ISSUED DME:** Eyeglass Frames Permanent

## MHSDS

**MHLOC:** CCCMS

RECEIVED HCCAR

C-56630

P.O. Box 409060, C13-241

Ione, CA 95640





RECEIVED HCCAB JUL 28 2021

California Correctional Health Care Service
Health Care Correspondence and Appeals Branch
P.O. Box 588500
ELK Grove, CA 95758

-Confidential-

12-19-21

I'm writing you in hopes that I can purchase a copy of my Health Care Grievance from your office; Tracking #: MCSP SC 21000039. In the process of moving from cell to cell for Covid, my Box of mail, Legal-Documents were Lost and I would like to continue my Grievance on to the next Level. If you are able to send me a copy, can you please send me the information on how I can purchase the copy, along with information on how to send payment.

Sincerely & Thank You
Jonathan L. Davis
C-56630
C13-247L

P.S.
One-(1) self addressed stamped envelope enclosed...

STATE OF CALIFORNIA
**AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION**
CDCR 7385 (Rev. 10/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 1 of 2
Instructions: Pages 3 & 4

**All sections** must be completed for the authorization to be honored. Use "N/A" if not applicable.

## I. Patient Information

Last Name: Davis First Name: Jonathan Middle Name: Lynn
CDCR# C-56630 Date of Birth: 7-25-59
Street Address: P.O. Box 409060, CD-247L City/State/Zip: Ione, CA 95640

## II. Individual/Organization Authorized to Release Personal Health Records if Other Than CDCR

Name:
Address: City/State/Zip:

## III. Individual/Organization to Receive the Information

[45 C.F.R. § 164.508(c)(1)(ii), (iii) & Civ. Code § 56.11(e), (f)]

*The undersigned hereby authorizes CDCR's Health Information Management to release the health information pursuant to this authorization.*

Name: Jonathan L. Davis, C-56630
Relationship to Patient: Phone: Fax:
Address: P.O. Box 409060, CD-247L City/State/Zip: Ione, CA 95640

## IV. Authorization Expiration Event or Expiration Date for Release of Verbal Information/ Written Correspondence

[45 C.F.R. § 164.508(c)(1)(v) & Civ. Code § 56.11(h)]

Unless otherwise revoked by the patient, this authorization for the release of health care information to the above-named individual/organization will expire on the date specified below, event identified, or 12 months from the date signed in Section IX, whichever occurs first:
Date of Expiration: Event: Grievance Form MCSP SC 21000039
From (mm/dd/yyyy): To (mm/dd/yyyy):

## V. Health Care Records to be Released - General

[45 C.F.R. § 164.508(c)(1)(i) & Civ. Code § 56.11(d), (g)]

I authorize records for the following period of time to be released (must be completed to receive records):
From (mm/dd/yyyy): 2021 To (mm/dd/yyyy): 2022

☑ Medical Services ☐ Dental Services ☐ Other: Grievance Copy from Surgery

NOTE: Health records released as part of this authorization may contain references related to mental health, substance use disorder, medication assisted treatment, genetic testing, communicable disease, and HIV medical conditions.

## VI. Health Records to be Released - Specify

[45 C.F.R. § 164.508(c)(1)(i) & Civ. Code § 56.11(d), (g)]

| Record | From | To | Signature | Date |
|---|---|---|---|---|
| ☐ Communicable Disease Records | | | | |
| ☐ Genetic Testing Records | | | | |
| ☐ HIV Test Results | | | | |
| ☐ Medication Assisted Treatment Records | | | | |
| ☐ Mental Health Treatment Records | | | | |
| ☐ Substance Use Disorder Records | | | | |

NOTE: Health records released as part of this authorization may contain references related to dental, medical, mental health, substance use disorder, medication assisted treatment, genetic testing, communicable disease, and HIV conditions.
**Requests for psychotherapy notes require a separate CDCR 7385 and may not be combined with any other request for health records.**
☐ Psychotherapy Notes

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

STATE OF CALIFORNIA
AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION
CDCR 7385 (Rev. 10/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

## Instructions

**Note: Part IV is the request for release of verbal health care information or health care information as part of written correspondence, and Part V is the request for release of health care records.**

Part I - **"Patient Information"**: Records the patient's full name (last, first, and middle), CDCR number, date of birth, and address if he/she is paroled or released (incarcerated patients do not need to provide an address).

Part II - **"Individual/Organization Authorized to Release Personal Health Records If Other Than CDCR"**: Records the name and address of the individual or organization authorized to release personal health records if other than CDCR.

Part III - **"Individual/Organization to Receive the Information"**: Records who is to receive the information.

Part IV - **"Authorization Expiration Event or Expiration Date for Release of Verbal Information/Written Correspondence"**: Used by the patient to limit the time period during which information may be shared.

- The patient may enter the date he/she wants the authorization to expire.
- The patient may enter an expiration event.
- The patient may enter a date range of information to be shared.
- If no expiration date is specified, this authorization is good for 12 months from the date signed in Section IX.

Part V - **"Health Care Records to be Released - General"**: Contains a designated line for the date range of health care records to be released.

- **"Medical Services"** is checked when the patient wishes to have information released related to medical care.
- **"Dental Services"** is checked when the patient wishes to have information released related to dental treatment.
- **"Other"** is checked when the patient wishes to further restrict or further authorize the release of his/her medical information, and he/she is to write those wishes on the line provided.

Part VI - **"Health Records to be Released - Specify"**: Health care information in this section requires a date range, additional signature, and signature date.

- **"Communicable Disease"** is checked when the patient wishes to have information released related to communicable disease testing and treatment. Communicable disease includes sexually transmitted infections.
- **"Genetic Testing"** is checked when the patient wishes to have information released related to genetic testing.
- **"HIV Test Results"** is checked when the patient wishes to have HIV test results released.
- **"Medication Assisted Treatment Records"** is checked when the patient wishes to have information related to medication assisted treatment released.
- **"Mental Health Treatment Records"** is checked when the patient wishes to have information released related to mental health treatment.
- **"Substance Use Disorder Records"** is checked when the patient wishes to have information related to substance use disorder treatment released.
- **"Psychotherapy Notes"** is checked when the patient wishes to have psychotherapy notes released. Requests for psychotherapy notes require a separate CDCR 7385 **and may not be combined with any other request for health care records.**

Under HIPAA, there is a difference between regular personal health information and psychotherapy notes. The following is HIPAA's definition of psychotherapy notes (§164.501):

*Psychotherapy notes means notes recorded (in any medium) by a health care provider who is a mental health professional documenting or analyzing the contents of conversation during a private counseling session or a group, joint, or family counseling session and that are separated from the rest of the individual's medical record. Psychotherapy notes excludes medication prescription and monitoring, counseling session start and stop times, the modalities and frequencies of treatment furnished, results of clinical tests, and any summary of the following items: diagnosis, functional status, the treatment plan, symptoms, prognosis, and progress to date.*

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION
CDCR 7385 (Rev. 10/19)

**Instructions (continued)**

<u>Part VII</u> - **"Purpose for the Release or Use of the Information":** Should have at least one box checked. The patient may utilize this section to check the provided boxes or select "Other" and describe the reason(s) he/she wants to have the information released. If the patient does not want to designate a purpose, he/she may check the "Other" and state "At the request of the individual authorizing the release."

<u>Part VIII</u> - **"Authorization Information":** Below this section are eight points which detail patient rights in regards to authorizing release of information.

1. Tells the patient that he/she is giving authorization voluntarily.
2. Explains how to stop this authorization. The patient may revoke the authorization by submitting his/her request in writing to his/her institution's Health Information Management. The authorization will be removed from the patient's medical record when the revocation is received by Health Information Management.
3. Explains that signing this authorization is voluntary and will not affect treatment.
4. Explains that the recipient of the protected health care information under the authorization is prohibited from re- disclosing the information, except with a written authorization from the patient or as specifically required under law.
5. Explains that the released information may no longer be protected by federal privacy regulations depending on the intended recipient of the released information.
6. Explains that the patient has the right to receive a copy of this authorization. This will be sent to the patient by Health Information Management.
7. Explains that reasonable fees may be charged to cover copying and postage costs related to releasing the patient's health information.
8. Explains that substance use disorder records are protected and cannot be disclosed without the patient's written consent unless otherwise provided for by the regulations.

<u>Part IX</u> - **"Patient Signature":** The bottom of page two is for the patient's, his/her representative's, or the translator/interpreter's signature. The patient's printed name, signature, and date are to be entered in the boxes provided. If this authorization is completed by a patient representative (e.g., power of attorney, estate representative, next of kin), his/her printed name, relationship to patient, signature, and date are to be entered in the boxes provided. Also attached must be a copy of either the Power of Attorney, letters issued in estate proceeding, or declaration of next of kin. If an interpreter/translator assisted the patient in filling out this form, his/her printed name, signature, and date are to be entered in the boxes provided.

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.

STATE OF CALIFORNIA
**AUTHORIZATION FOR RELEASE OF PROTECTED HEALTH INFORMATION**
CDCR 7385 (Rev. 10/19)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Form: Page 2 of 2
Instructions: Pages 3 & 4

**All sections** must be completed for the authorization to be honored. Use "N/A" if not applicable.

## VII. Purpose for the Release or Use of the Information

[45 C.F.R. § 164.508(c)(1)(iv)]

☐ Health Care ☐ Personal Use ☑ Legal ☐ Other (please specify): Filing To The Court

## VIII. Authorization Information

I understand the following:

1. I authorize the use or disclosure of my individually identifiable protected health information as described above for the purpose listed. I understand this authorization is voluntary.

2. I have the right to revoke this authorization. To do so I understand I can submit my request in writing to my current institution's Health Information Management (health records). The authorization will stop further release of my protected health information on the date my valid revocation request is received by Health Information Management. [45 C.F.R. § 164.508(c)(2)(i)]

3. I am signing this authorization voluntarily and understand that my health care treatment will not be affected if I do not sign this authorization. [45 C.F.R. § 164.508(c)(2)(ii)]

4. Under California law, the recipient of the protected health information under the authorization is prohibited from re-disclosing the protected health information, except with a written authorization or as specifically required or permitted by law. [Civ. Code § 56.13]

5. If the organization or person I have authorized to receive the protected health information is not a health plan or health care provider, the released information may no longer be protected by federal and state privacy regulations.[45 C.F.R. § 164.524(a)(2)(v)]

6. I have the right to receive a copy of this authorization. [45 C.F.R. § 164.508(c)(4) & Civ. Code § 56.11(i)]

7. Reasonable fees may be charged to cover the cost of copying and postage related to releasing this protected health information. [45 C.F.R. § 164.524(c)(4) et seq. & California Health and Safety Code § 123110, et seq.]

8. I understand that my substance use disorder records are protected under the federal regulations governing Confidentiality and Substance Use Disorder Patient Records, 42 C.F.R., Part 2, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 45 C.F.R. pts 160 & 164, and cannot be redisclosed without my written consent unless otherwise provided for by the regulations.

## IX. Patient Signature

[45 C.F.R. § 164.508(c)(1)(vi) & Civ. Code § 56.11(c)(1)]

Name: (Print): Jonathan Lynn Davis

Signature: Jonathan L. Davis Date: 1-31-22

If no expiration date is specified in section IV, this authorization will expire 12 months from this date.

Name of person signing form, if not patient (Print): ______

Signature: ______ Date: ______

Describe authority to sign form on behalf of patient: ______

Name of translator/interpreter assisting patient, if applicable (Print): ______

Signature of translator/interpreter: ______ Date: ______

Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.



CALIFORNIA CORRECTIONAL
HEALTH CARE SERVICES



**Headquarters' Level Response**

**Closing Date:** OCT 01 2021

**To:** DAVIS, JONATHAN (C56630)
Mule Creek State Prison
P.O. Box 409099
Ione, CA 95640

**From:** California Correctional Health Care Services
Health Care Correspondence and Appeals Branch
P.O. Box 588500
Elk Grove, CA 95758

**Tracking #:** MCSP SC 21000039

**RULES AND REGULATIONS**

The rules governing these issues are: California Code of Regulations, Title 15; Health Care Department Operations Manual; Mental Health Services Delivery System Program Guide; California Department of Corrections and Rehabilitation Department Operations Manual.

**HEALTH CARE GRIEVANCE SUMMARY**

Refer to the attached CDCR 602 HC, Health Care Grievance, in which you explained the decision, action, condition, omission, policy, or regulation that has had a material adverse effect upon your health or welfare for which you seek administrative remedy.

The institutional level reviewing authority categorized your health care grievance as a staff complaint.

**HEADQUARTERS' LEVEL DISPOSITION**

[X] No intervention. [ ] Intervention.

**BASIS FOR HEADQUARTERS' LEVEL DISPOSITION**

The institutional level reviewing authority referred the allegation of staff misconduct to the California Correctional Health Care Services Direct Care Contracts Section in accordance with California Correctional Health Care Services Administrative Policy, Section 5, Chapter 6, Direct Health Care Service Contractor and/or Provider Performance Issue Reporting Policy and Procedure.

Complaints against staff are taken seriously and all efforts are made to ensure these matters are thoroughly researched and responded to in accordance with governing laws, rules, and policies. Any report generated or action taken is confidential and will not be released to inmates under any circumstances. You have been provided all information to which you have a right under California Code of Regulations, Title 15, Section 3999.231.

Note 1: The Headquarters' Level Review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The Closing Date reflects the closed, mailed/delivered date to the health care grievance.

Per California Code of Regulations, Title 15, Section 3999.227(e), "The grievant is limited to one issue or set of issues related to a single health care discipline that can reasonably be addressed in a single health care grievance response." Your medical issue was bifurcated and addressed in health care grievance tracking number MCSP HC 20001844.

If you have health care needs, you may access health care services by utilizing approved processes in accordance with California Correctional Health Care Services policy.

This decision exhausts your administrative remedies.

for Digitally signed by HCCAB Date: 2021.09.30 15:23:33 -07'00'

September 30, 2021

Reviewed and Signed Date

S. Gates, Chief
Health Care Correspondence and Appeals Branch
Policy and Risk Management Services
California Correctional Health Care Services

Note 1: The Headquarters' Level Review is based on records available as of the date the Headquarters' Level Response is signed by the reviewing authority.
Note 2: The Closing Date reflects the closed, mailed/delivered date to the health care grievance.

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
**CDCR 602 HC (Rev. 10/18)**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 1 of 2

**STAFF USE ONLY** Expedited? ☐ Yes ☐ No Tracking #: SC 21000039

See attached

Staff Name and Title (Print) Signature Date

**If you think you have a medical, mental health or dental emergency, notify staff immediately.** If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| Davis, J. | C56630 | |

**SECTION A:** **Explain the** applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

**SEE ATTACHED**
**CDC-1824/602**

**Supporting Documents Attached. Refer to CCR 3999.227** ☐ Yes ☐ No

**Grievant Signature:** **Date Submitted:**

**BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.** ✓

**SECTION B:** **HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only** Is a CDCR 602 HC A attached? ☒ Yes ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: _____ Date: _____

☐ Withdrawn (see section E)

☒ Accepted Assigned To: M. Ashe Title: CP&S Date Assigned: 6/8/21 Date Due: 7/5/21

Interview Conducted? ☒ Yes ☐ No Date of Interview: 6/18/21 Interview Location: C Clinic

Interviewer Name and Title (print): Mariana Ashe Signature: [signature] Date: 6/18/21

Reviewing Authority Name and Title (print): Mariana Ashe, Chief P&S Signature: [signature] Date: 6/18/21

**Disposition:** See attached letter ☐ Intervention ☒ No Intervention

**HCGO Use Only:** Date closed and mailed/delivered to grievant: JUL 01 2021

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | Please check one: |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments:

STAFF USE ONLY

COMPLETED MCSP JUL 01 2021 HCGO

RECEIVED HCCAB JUL 28 2021

COMPLETED HCCAB OCT 01 2021

STATE OF CALIFORNIA
**HEALTH CARE GRIEVANCE**
**CDCR 602 HC (Rev. 10/18)**

DEPARTMENT OF CORRECTIONS AND REHABILITATION
Page 2 of 2

Tracking #: 21000039

**SECTION C:** **Health Care Grievance Appeal. If you are dissatisfied with the Institutional Level Grievance Response**, explain the reason below (if more space is needed, use Section C of the CDCR 602 HC A), and submit the entire health care grievance package by mail for Headquarters' (HQ) Level health care grievance appeal review. Mail to: Health Care Correspondence and Appeals Branch, P.O. Box 588500, Elk Grove, CA 95758.

**Grievant Signature:** **Date Submitted:**

**SECTION D:** **HEALTH CARE GRIEVANCE APPEAL REVIEW HQ LEVEL: Staff Use Only** Is a CDCR 602 HC A attached? ☒ Yes ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: Date:

☐ Withdrawn (see section E) ☒ Accepted

☐ Amendment Date:

Interview Conducted? ☐ Yes ☒ No Date of Interview: Interview Location:

Interviewer Name and Title (print): Signature: Date:

**Disposition:** See attached letter ☐ Intervention ☒ No Intervention

***This decision exhausts your administrative remedies.***

**HQ Use Only:** Date closed and mailed/delivered to grievant: OCT 01 2021

**SECTION E:** **Grievant requests to WITHDRAW health care grievance:** I request that this health care grievance be withdrawn from further review. Reason:

**Grievant Signature:** **Date Submitted:**

**Staff Name and Title (Print):** **Signature:** **Date:**

STAFF USE ONLY

Distribution: Original - Returned to grievant after completed; Scanned Copy - Health Care Appeals and Risk Tracking System 2.0 (Do not place in central file or health record)

*Unauthorized collection, creation, use, disclosure, modification or destruction of personally identifiable information and/or protected health information may subject individuals to civil liability under applicable federal and state laws.*

STATE OF CALIFORNIA
DEPARTMENT OF CORRECTIONS AND REHABILITATION

**HEALTH CARE GRIEVANCE**
CDCR 602 HC (Rev. 10/18)



MCSP SC 21000039

**STAFF USE ONLY** Expedited? ☐ Yes ☒ No Tracking #: MCSP-HC ~~#20001844#~~

Staff Name and Title (Print): D. Gr, RN Signature: [signature] Date: 10/30/2020

**If you think you have a medical, mental health or dental emergency, notify staff immediately.** If additional space is needed, use Section A of the CDCR 602 HC A Health Care Grievance Attachment. Only one CDCR 602 HC A will be accepted. You must submit this health care grievance to the Health Care Grievance Office for processing. Refer to California Code of Regulations (CCR), Title 15, Chapter 2, Subchapter 2, Article 5 for further guidance with the health care grievance process.

**Do not exceed more than one row of text per line. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First, MI): | CDCR #: | Unit/Cell #: |
|---|---|---|
| Davis, Jonathan | C56630 | C13 247L |

**SECTION A:** Explain the applied health care policy, decision, action, condition, or omission that has had a material adverse effect upon your health or welfare for which you seek administrative remedy:

**SEE ATTACHED**
**CDC-1824/602**

**Supporting Documents Attached. Refer to CCR 3999.227** ☐ Yes ☐ No

**Grievant Signature:** **Date Submitted:**

**BY PLACING MY INITIALS IN THIS BOX, I REQUEST TO RECEIVE AN INTERVIEW AT THE INSTITUTIONAL LEVEL.** [ / ]

**SECTION B: HEALTH CARE GRIEVANCE REVIEW INSTITUTIONAL LEVEL: Staff Use Only** Is a CDCR 602 HC A attached? ☒ ~~Yes~~ ☐ No

This grievance has been:

☐ Rejected (See attached letter for instruction): Date: ______ Date: ______

☐ Withdrawn (see section E)

☒ Accepted Assigned To: HCGO Title: RN Date Assigned: 11/6/20 Date Due: 1/8/21

Interview Conducted? ☐ Yes ☒ No Date of Interview: —— Interview Location: ——

Interviewer Name and Title (print): Interview suspended due to covid-19 Signature: Date: ——

Reviewing Authority Name and Title (print): Marianna Ashe MD Signature: [signature] Date: 1/7/21

**Disposition:** See attached letter ☐ Intervention ☒ No Intervention

**HCGO Use Only:** Date closed and mailed/delivered to grievant: JAN 08 2021

STAFF USE ONLY

| 1. Disability Code: | 2. Accommodation: | 3. Effective Communication: |
|---|---|---|
| ☐ TABE score ≤ 4.0 | ☐ Additional time | ☐ Patient asked questions |
| ☐ DPH ☐ DPV ☐ LD | ☐ Equipment ☐ SLI | ☐ Patient summed information |
| ☐ DPS ☐ DNH | ☐ Louder ☐ Slower | **Please check one:** |
| ☐ DDP | ☐ Basic ☐ Transcribe | ☐ Not reached* ☐ Reached |
| ☐ Not Applicable | ☐ Other* | *See chrono/notes |

4. Comments:

COMPLETED HCCAB OCT 01 2021

RECEIVED MCSP OCT 30 2020 HCGO

COMPLETED MCSP JAN 08 2021 HCGO

COMPLETED MCSP JUL 01 2021

RECEIVED HCCAB HCGO

# UNITED STATES DISTRICT COURT

Eastern District Court of California
Keith Holland, Clerk
Jenna Nelson, Chief Deputy

CLERK'S NOTICE

☐ **REPLY TO:**
Divisional Office
2500 Tulare St. #1-500
Fresno, California 93721

☒ **REPLY TO:**
Office of the Clerk
501 I Street #4-200
Sacramento, CA 95814

TO:
Jonathan Davis, C-56630
Mule Creek State Prison
PO Box 409060
Ione, CA 95640

Case Number: n/a

RE: Pleadings and/or Correspondence received on : 4/25/2022

☒ **E-FILING** : Pursuant to Standing Order of the Chief District Judge entitled "In Re: Procedural Rules for Electronic Submission of Prisoner Litigation filed by Plaintiffs Incarcerated", the document(s) can not be filed because your institution participates in the e-filing program with the court. Per the Standing Order, the document(s) is (are) returned unfiled and must be filed under E-Filing procedure with the Librarian/Litigation Coordinator. When filing documents under E-Filing procedures, please include this document (Clerk's Notice) with the e-filing documents.

Thank you for your future attention to this matter.

| kz | 4/25/2022 |
|---|---|
| Deputy Clerk | Date |

# INSTRUCTIONS FOR FILING A COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS STATUTE, 42 U.S.C. § 1983

## I. Scope of Section 1983

An action under Section 1983 is available to challenge violations of the federal constitution or federal statutes which affect the conditions of your confinement or your treatment by government employees while in custody. Although you may ask for and obtain money damages or an injunction under Section 1983, the court cannot issue an order which could affect the length of your sentence in any way. Those types of claims may only be raised through a petition for a writ of habeas corpus. If you want to file a petition for a writ of habeas corpus, you must do so on the correct forms, which are provided by the Clerk of the Court on request.

## II. Packet

One copy of a complaint form is attached to this instruction sheet. In addition, included in the packet are an information sheet for prisoners seeking leave to proceed in forma pauperis (without prepayment of filing fees) and one copy of an application to proceed in forma pauperis. To start an action, the following items must be included:

1. An original and one copy of the complaint. You must keep an additional copy of the complaint for your own records. All copies of the complaint must be identical to the original.

2. Either a completed in forma pauperis application or pay the $400.00 filing fee.

## III. Complaint Form

Your complaint must be legibly handwritten or typewritten. You must sign each copy of the complaint and declare under penalty of perjury that the facts stated in the complaint are correct. If you need additional space to answer a question, you should attach an additional blank page. You are required to state facts in support of each claim. The complaint should refer to the provision of the federal constitution or federal law on which you are relying, but should not contain legal arguments or citations.

## IV. Venue

Your complaint should be brought in the Sacramento Division of this court only if one or more of the named defendants is located in the Sacramento Division of the Eastern District of California or if your claim arose in the Sacramento Division of this district. The Sacramento Division of the Eastern District of California is comprised of the following counties: Alpine, Amador, Butte, Colusa, El Dorado, Glenn, Lassen, Modoc, Mono, Nevada, Placer, Plumas, Sacramento, San Joaquin, Shasta, Sierra, Siskiyou, Solano, Sutter, Tehama, Trinity, Yolo, and Yuba.

Your complaint should be brought in the Fresno Division of this court only if one or more of the named defendants is located in the Fresno Division of the Eastern District of California or if your claim arose in the Fresno Division of this district. The Fresno Division of the Eastern District of California is comprised of the following counties: Fresno, Calaveras, Inyo, Kern, Kings, Madera, Mariposa, Merced, Stanislaus, Tulare, and Tuolumne.

V. Mailing the Forms

When all of the forms described in part II are completed, if you are bringing your case in the Sacramento Division, mail the original and copies to:

Clerk of the U.S. District Court
for the Eastern District of California
501 I Street, Room 4-200
Sacramento, California 95814

If you are bringing your case in the Fresno Division, mail the original and copies to:

Clerk of the U.S. District Court
for the Eastern District of California
2500 Tulare Street
Fresno, California 93721

VI. After the Complaint is Filed

Once the complaint is filed, the court will review it and decide whether to order service of the complaint on the defendants. You will be sent a copy of any order the court issues. Because of the large volume of cases filed by inmates pending in this court, the court WILL NOT ANSWER INQUIRIES concerning the status of your complaint.

You must keep the Clerk of the Court informed of any change of address. If you fail to do so, the Clerk cannot be responsible for your failure to receive Court orders. This could result in the dismissal of your suit.

The Clerk of the Court will provide copies of documents and of the docket sheet at the rate of fifty cents ($0.50) per page. Checks in the exact amount are made payable to "Clerk, USDC." In forma pauperis status does not waive the cost of copies. Therefore you must keep copies of all documents submitted to the court for your own records.

Your complaint should be brought in the Fresno Division of this court only if one or more of the named defendants is located in the Fresno Division of the Eastern District of California or if your claim arose in the Fresno Division of this district. The Fresno Division of the Eastern District of California is comprised of the following counties: Fresno, Calaveras, Inyo, Kern, Kings, Madera, Mariposa, Merced, Stanislaus, Tulare, and Tuolumne.

V. Mailing the Forms

When all of the forms described in part II are completed, if you are bringing your case in the Sacramento Division, mail the original and copies to:

Clerk of the U.S. District Court
for the Eastern District of California
501 I Street, Room 4-200
Sacramento, California 95814

If you are bringing your case in the Fresno Division, mail the original and copies to:

Clerk of the U.S. District Court
for the Eastern District of California
2500 Tulare Street
Fresno, California 93721

VI. After the Complaint is Filed

Once the complaint is filed, the court will review it and decide whether to order service of the complaint on the defendants. You will be sent a copy of any order the court issues. Because of the large volume of cases filed by inmates pending in this court, the court WILL NOT ANSWER INQUIRIES concerning the status of your complaint.

You must keep the Clerk of the Court informed of any change of address. If you fail to do so, the Clerk cannot be responsible for your failure to receive Court orders. This could result in the dismissal of your suit.

The Clerk of the Court will provide copies of documents and of the docket sheet at the rate of fifty cents ($0.50) per page. Checks in the exact amount are made payable to "Clerk, USDC." In forma pauperis status does not waive the cost of copies. Therefore you must keep copies of all documents submitted to the court for your own records.